BEFORE THE AMERICAN ARBITRATION ASSOCIATION
ST. LOUIS, MISSOURI

| | |
|---|---|
| THE SALVATION ARMY, | ) |
| Claimant, | ) ) ) |
| vs. | ) Case No.: 01-16-0002-8533 ) |
| S.M. WILSON & CO. AND ARCHITECHNICS, INC., | ) ) ) ) |
| Respondents. | ) |

## *RESPONDENTS' JOINT MOTION FOR A SHOW CAUSE ORDER*

COME NOW, Respondents S.M. Wilson & Co. ("SMW") and Architechnics, Inc. ("AI"), and for their Joint Motion for a Show Cause Order, state:

### INTRODUCTION

On January 23, 2020, the Panel ordered TSA to "produce all non-privileged texts as requested, which were not previously produced … [to] include … the texts of Gary Dowell." TSA was also required to verify compliance.

Considering the text messages produced by Respondents to this point in the litigation in context with text messages previously produced by Ryan Keck, Respondents have a serious concern that TSA has not only failed to preserve text messages during this arbitration, but has also deleted relevant text messages intentionally to deprive Respondents of the information contained therein. TSA's response to the Panel's Order did not address these issues.

As previously reported to this Panel, TSA employee Gary Dowell texted third-party Ryan Keck about destroying text messages (TSA contends that this was a joke). However, TSA's formal response makes clear that no text messages are being withheld on the basis of privilege.

{02308381.DOCX;1}

Exhibit A

That leaves no explanation for the missing text messages and Respondents are unable to come up with an explanation other than Mr. Dowell destroyed them (along with others pertaining to the mechanical issues of the case). If that happened, then Mr. Dowell's affidavit to this Panel would also be false.

Based on gaps in other text messages and other hiding of the ball by TSA, Respondents respectfully request this Panel order TSA to show cause why it should not be sanctioned.

## AUTHORITY

The scope of this Panel's authority is determined by the contracts requiring arbitration. *See Willick v. Napoli Bern Ripka & Assocs., LLP*, No. 2:15-cv-00652-AB (Ex), 2018 U.S. Dist. LEXIS 227559, at *8 (C.D. Cal. Sep. 13, 2018) "[T]he arbitrator's interpretation of the scope of his powers is entitled to the same level of deference as his determination on the merits." *Id.* (internal quotations and citations omitted).

Sections 4.5.2 of the TSA-SMW Agreement and 1.3.4.2 of the TSA-AI Agreement require resolution of the claims (absent agreement otherwise), to "be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect." Ex. A, Dec. 13, 2007, TSA-SMW Agreement; Ex. B, Jun. 7, 2007, TSA-AI Agreement.

Pursuant to Construction Arbitration Rule 60 of the American Arbitration Association effective July 1, 2015:[1]

> (a) The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator. In the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to the

---

[1] The First Scheduling Order used this version of the rules pursuant to agreement of the parties.

> making of an award. The arbitrator may not enter a default award as a sanction.
>
> (b) The arbitrator must provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanction's application.

Paragraph (a) does not prevent default or striking pleadings, but reflects the process in federal courts whereby a court may enter default without imposing a monetary sanction. *Willick*, 2018 U.S. Dist. LEXIS 227559, at *11.

Pursuant to Federal Rule of Civil Procedure[2] 37, the duty to preserve arises when "litigation is reasonably foreseeable." *Stevens v. Brigham Young Univ.*, No. 4:16-CV-530-BLW, 2019 U.S. Dist. LEXIS 209981, at *9 (D. Idaho Dec. 3, 2019) (citing Rule 37 Advisory Committee Notes to the 2015 Amendment). Fed. R. Civ. P. 37(e) states:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).[3]

---

[2] The parties agreed that Federal Rules of Civil Procedure applied to all discovery proceedings in this matter (specifically excepting arguments regarding the Statute of Limitations). Ex. C.

[3] Federal law allows imposition of sanctions for spoliation of evidence. *See Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012). Under federal law, "there must be a finding of intentional destruction indicating a desire to suppress the truth." *Id.* (citing *inter alia*, *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1111–12 (8th Cir.1988) (adverse inference instruction is appropriate only where spoliation or destruction of evidence is intentional and

**ARGUMENT**

The facts show both selective deletion and failure to preserve text messages. There is a strong inference that was done intentionally to deprive Respondents of the information's use in this arbitration.

**I.     TSA allowed text messages to be deleted selectively and automatically.**

TSA filed this arbitration on July 13, 2016. Long before that, it knew of a potential for litigating many of the issues. Indeed, by March 18, 2015, TSA employee Chad Rodgers reported to TSA's Property Committee that he had contacted firms to investigate issues regarding HVAC, electrical, and plumbing issues. Ex. D, TSA_0034355–56.

On January 26, 2017, AI served TSA with its First Request for Production, which included a request for project correspondence and maintenance. *See* Group Ex. A to AI's Sec. Mot. to Compel. TSA reiterated that request on May 22, 2019, after Mr. Rodgers' deposition testimony and Mr. Waldron's assurance that TSA would "take care of it." *See* AI's Second Motion to Compel and Group Ex. A.

**A.  TSA deleted text messages.**

Ryan Keck of Keck Heating & Air Conditioning, Inc. is a TSA contractor who began providing HVAC service to TSA around 2014. On November 13, 2019, Mr. Keck produced his text messages with TSA employees Rodgers and Dowell. *See* AI's Motion for Leave to Request Oral Argument Regarding its Second Motion to Compel and Exhibits.

---

indicates a fraud or desire to suppress the truth)); *see also Stevenson v. Union Pacific R. Co.*, 354 F.3d 739 (8th Cir. 2004).

The following Exhibits E compare text messages produced by Keck with those produced by TSA employee Dowell and show clearly missing messages:[4]



---

[4] Exhibit E contains text messages between Ryan Keck and Gary Dowell. The left column includes text messages from Ryan Keck's cell phone. The green arrows show texts that exist on Keck's phone. In the right column are text messages from Dowell's phone between Dowell and Keck. The red arrows show text messages that no longer exist on Dowell's phone.

5

{02308381.DOCX;1}

| **KECK'S PHONE** | **DOWELL'S PHONE** |
|---|---|
|  | |

{02308381.DOCX;1}

| KECK'S PHONE | DOWELL'S PHONE |
|---|---|
|  | |

{02308381.DOCX;1}

| **KECK'S PHONE** | **DOWELL'S PHONE** |
|---|---|
|  | |

8

{02308381.DOCX;1}



| KECK'S PHONE | DOWELL'S PHONE |
|---|---|

Ex. E (full text chain documents).

TSA attached as Exhibit B to its Response to AI's Motion for Leave an Affidavit of Gary J. Dowell, in which he avers that he was joking about deletion of text messages. Ex. F.

{02308381.DOCX;1}

Specifically, Mr. Dowell testified, *under oath*, as follows:

> 8. I fully complied with all requests made of me for my phone texts and have not destroyed or withheld any text messages. Someone from TSA's law firm contacted me while I was on medical leave and confirmed what the settings were on my i-phone for retaining text messages. They learned that my phone automatically recycles text messages after a short period of time and they helped me figure out how to change that. They also checked my i-cloud account to see if any text messages were saved there and they determined no such text messages were backed up beyond what was on my phone. I understand the settings now retain all text messages on my phone for an indefinite period.
>
> 9. I have since provided additional text messages from my phone as requested.

Ex. F.

However, the comparison of text messages above belies Mr. Dowell's averment that the missing messages were automatically deleted. Respondents are unable to hypothesize an explanation for the selective deletion of messages other than an intentional attempt to deprive Respondents of that information's use in the arbitration. Accordingly, Respondents respectfully request that the Panel order TSA to show cause why sanctions should not be imposed.

**B. TSA failed to preserve text messages after the duty to preserve arose.**

Since text messages produced from Mr. Dowell's phone only date back to September 2019 (Ex. G), his affidavit implies that his phone automatically deleted the text messages older than thirty days despite:

1) His awareness of issues at the Kroc Center;
2) TSA's early and continued use of consultants regarding issues;
3) TSA's filing of arbitration in 2016;
4) AI's First Request for Production in 2017;
5) Chad Rodgers' testimony regarding texts and TSA's assurance of retrieving texts in May 2019;
6) AI's Second Request for Production;
7) AI's Second Motion to Compel;

10

>       8)      AI's Motion for Leave regarding Oral Argument regarding its Second Motion to Compel; and
>
>       9)      Reference by Mr. Dowell in text messages by Mr. Keck indicating knowledge text messages were sought in the litigation.

There can be no dispute that TSA and Mr. Dowell knew to preserve evidence, including text messages, yet by his own admission, Mr. Dowell allowed automatic deletion of messages until September 2019.[5]

TSA hired Gary Dowell as the Kroc Center Maintenance Supervisor on July 5, 2011. Ex. H. After a year and a half, he was promoted to Facility Manager. Ex. H. Mr. Dowell likely would have had been involved in many issues at the Kroc Center, and his text messages may have revealed not only remedial measures, but information regarding when issues were first reported to him (or when he first reported them). This information likely would have had a bearing on the accrual of the statute of limitations, but Respondents have been deprived of discovery thereon because of Mr. Dowell's failure to preserve these text messages. The failure to preserve touches directly on a dispositive issue, and the remedy should be commensurate.

Meanwhile, TSA's compliance memorandum states that text messages from Tony Thomas's phone only date back to September 11, 2019, and that text messages from Chad Rodgers' phone only date back to May 26, 2017.[6] For the same reasons, TSA's failure to preserve these messages also implicate dispositive issues.

AI requested maintenance records pertaining to the Kroc Center subject to this arbitration and separately requested all communications (including but not limited to internal communications but also external communications). *See* Group Exhibit A to AI's Second

---

[5] The undersigned counsel understands that the default factory iPhone setting is that text messages are preserved unless a user actively adjusts the settings to enable automatic destruction. At any rate, an automatic deletion setting would not selectively delete some text messages while leaving others.

[6] TSA has stated it has only produced texts from Chad Rodgers to Gary Dowell dating back to June 1, 2018, but has not stated where earlier text messages between Chad Rodgers and Gary Dowell may be.

{02308381.DOCX;1}

Motion to Compel. TSA has not included in its compliance memorandum any text messages to WJE, McGuire, BTR, Peters, TMI, or any external companies pertaining to remedying alleged issues in this action, which suggests that those text messages have been destroyed, too.

### C. Context clues in messages produced suggest TSA has deleted other messages.

Although Respondents are unable to compare all text messages of TSA employees with those of a subpoenaed third-party, it is clear from context clues (non sequiturs and unsolicited responses) in the text messages produced that other messages were likely also deleted. Attached as Exhibit I is a demonstrative showing presumably deleted original text messages based on the context of the messages that remain. Ex. I.

### D. Respondents request *in camera* review and ruling of TSA text redactions.

There is insufficient evidence in the compliance memorandum for Respondents to determine the validity of the text redactions. Accordingly, and in light of the known deletions described above, Respondents respectfully request that the Panel consider and rule on TSA's redactions of text messages *in camera*.

### II. Respondents respectfully request that they be permitted to submit a subpoena to this Panel for execution to obtain ARCHIBUS records from ARCHIBUS.

Pursuant to this Panel's Order, Respondents request permission to submit a subpoena for execution and issuance from this Panel to ARCHIBUS.

### III. TSA has not identified which minutes have been or are being produced pursuant to this Panel's Order, and it has provided no basis for withholding several months of Territorial Property Committee minutes.

This Panel ordered TSA to "prepare and file a formal response indicating what meeting minutes and attachments have been or are being produced." However, TSA still has not

12

produced a large portion of its Territorial Property Minutes for the time during and immediately after construction of the Kroc Center.  Respondents respectfully submit that TSA has not complied with the Panel's order, but instead merely recites the number and types of minutes produced, to "include" "Territorial Property Minutes."  Respondents believe that full compliance with the Panel's Order should have included identifying the Territorial property minutes not produced, which Respondents submit would have revealed significant gaps in the Territorial Property Minutes production.  It is unclear whether TSA might be withholding those minutes on a claim of irrelevance or unresponsiveness,[7] or on some other basis.  Respondents submit that TSA should be ordered to produce all Territorial Property Minutes pursuant to the Protective Order already in place so that Respondents may review them for potentially relevant information contained therein.  In the alternative, Respondents respectfully request that this Panel order production of such unproduced minutes to the Panel for *in camera* review.

Respondents also note that TSA, in its compliance memorandum, admits that attachments to the minutes were "corrupted."  Presumably all members of the committee would have received a copy of these attachments with the minutes, and Respondents request the Panel to order TSA to show cause why sanctions should not be imposed for failure to preserve these attachments.

### IV. Respondents respectfully request that this Panel inquire as to e-mails from TSA's attorneys in August 2019 time.

On August 13, 2019, AI filed its first Motion to Compel which, in part, requested communications between TSA and Keck.  *See* Mot. to Comp. Sec. III.B.  AI requested that TSA

---

[7] TSA carefully states that it has "produced every ***responsive*** TSA meeting minute in its possession, custody, or control." Compliance Response at p. 4.  That statement, along with the gaps in production, suggest that TSA has made its own "responsiveness" determinations about which minutes to produce.  There is no privilege for "responsiveness."

produce all communications with Keck from the time of the subpoena to the present and requested the Panel to overrule any objection regarding the work product doctrine surrounding an alleged consultation relationship developed between the time of the subpoena to Keck and the deposition of Mr. Ryan Keck. *Id.*

On September 5, 2019, this Panel heard oral argument, and on September 9, 2019, this Panel issued an Order, stating:

> AI may discover all documents and communications being withheld on the basis of work product or attorney-client privilege between Mr. Keck, Mr. Keck's counsel, and TSA that occurred before the date the consulting agreement was entered between TSA and Mr. Keck. This date is represented as being May 10 or 11, 2019 by AI. . . AI may discover all communications, documents, and opinions following the date of the consulting agreement only if the communications, documents, or opinions related to matters outside of the subject area of expertise that is the subject of the consulting agreement. Documents to be produced to comply with this order shall be produced within ten business days from the date of this order.

On October 2, 2019, in its Second Motion to Compel, AI informed the Panel that it had requested but not received any "descri[ption of] the nature of the documents, communications, or tangible things not produced or disclosed. . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(ii); *see* Sec. Mot. to Comp. Sec. D.

On January 23, 2020, the Panel issued an Order requiring TSA to comply with its Order and to "prepare a formal response verifying compliance with this order that lists the date and sender of all text messages it produced, including those produced in response to this Order and, to the extent necessary, a privilege log."

On February 13, 2020, TSA stated that it had produced "all of its *e-mails* with *Ryan Keck* in its possession, custody, or control, except perhaps emails that are very recent in time as Ryan

14

Keck continues to generate emails associated with ongoing remedial work at the Kroc Center. . . TSA has not withheld any responsive *emails* with *Ryan Keck* based upon assertions of privilege." (Emphasis added).

Respondents do not wish to have TSA's counsel produce e-mails between counsel for unlimited time periods.  This would add a burden to everyone, and it is not within the scope of Respondents' request, here.  Respondents understand TSA has stated it is not withholding any e-mails with Ryan Keck.  However, TSA has not produced a privilege log regarding any documents pertaining to Keck since the alleged consultation relationship formed in May 2019.  Respondents understood the Panel's initial Order to be broader than simply e-mails between Mr. Keck and TSA's counsel, but that it should include documents between TSA and Keck (counsel and/or parties).

TSA has not produced e-mails from its counsel to Keck's counsel in August 2019.  Respondents respectfully request TSA to confirm whether there are any such emails, as Keck's attorney refused on the grounds that such emails came after the subpoena compliance date.  TSA's response should clarify what, if anything, regarding the above is being withheld in a privilege log.

## CONCLUSION

WHEREFORE, Respondents respectfully request that this Panel order TSA to show cause regarding the above, and for such relief this Panel deems appropriate, given the circumstances.

/s/ Robert Plunkert

Gary E. Snodgrass   #6184882
Robert T. Plunkert   #6301917
Attorney for Respondent Architechnics, Inc.

15

{02308381.DOCX;1}

                                        PITZER SNODGRASS, P.C.
                                        100 South Fourth Street, Suite 400
                                        St. Louis, Missouri 63102-1821
                                        (314) 421-5545
                                        (314) 421-3144 (Fax)
                                        Email: snodgrass@pspclaw.com
                                        Email: plunkert@pspclaw.com

                                        /s/ Matthew Shorey
                                        Matthew Shorey
                                        Christopher Baucom
                                        Mark Ohlms
                                        Tel: (314) 621-5070
                                        Fax: (314) 621-5065
                                        mshorey@atllp.com
                                        cbaucom@atllp.com
                                        mohlms@atllp.com

                                        ***Attorneys for Respondent S.M. Wilson & Co.***

     I hereby certify that a copy of the foregoing has been electronically served on this 18th day of February 2020, on the following:

| | |
|---|---|
| Barry L. Haith | Matt Shorey |
| Jonathan R. Waldron | Mark Ohlms |
| Stinson LLP | Armstrong Teasdale LLP |
| 7700 Forsyth Blvd., Suite 1100 | 7700 Forsyth Blvd., Suite 1800 |
| Clayton, MO 63105 | St. Louis, MO 63105 |
| Barry.haith@stinson.com | mshorey@armstrongteasdale.com |
| Jonathan.Waldron@stinson.com | mohlms@armonstrongteasdale.com |
| *Attorneys for The Salvation Army* | *Attorneys for S.M. Wilson & Co.* |
| | |
| Barry Haith's Administrative Assistant: | |
| Pamela.wiley@stinson.com | |
| | |
| | |
| Ken Slavens-Chair | Dudley McCarter |
| Husch Blackwell, LLP | Behr McCarter & Potter, PC |
| 190 Carondelet Plaza, Suite 600 | 7777 Bonhomme Ave., Suite 1400 |
| St. Louis, MO 63105 | St. Louis, MO 63105 |
| Ken.slavens@huschblackwell.com | dmccarter@bmplaw.com |
| *Panel* | *Panel* |

Jerome V. Bales
Rouse Frets White Goss Gentile Rhodes, P.C.

{02308381.DOCX;1}

5250 West 116th Place, Suite 400
Leawood, KS 66211
jbales@rousepc.com
*Panel*

          /s/ Robert T. Plunkert

{02308381.DOCX;1}